IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Rahshjeem Benson, | ) | C.A. No. 0:24-1195-HMH-PJG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Warden, FCI Edgefield, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court on the report and recommendation of United States

Magistrate Judge Paige J. Gossett made in accordance with 28 U.S.C. § 636(b)(1) and District of

South Carolina Local Civil Rule 73.02.  Petitioner Rahshjeem Benson ("Benson") brings this

habeas action under 28 U.S.C. § 2241 alleging that the Bureau of Prisons ("BOP") has

wrongfully denied him time credits under the First Step Act of 2018 ("FSA"), Pub. L. No. 115-

391, 132 Stat. 5194.  Benson claims that he is entitled to 160 days of credit for programming he

completed at a non-BOP facility between December 15, 2020, the day he was sentenced, and

March 30, 2022, the day he arrived at FCI Edgefield, his designated BOP facility.  (§ 2241

Petition 2, ECF No. 1.)

In her report and recommendation dated April 12, 2024, Magistrate Judge Gossett

recommends summarily dismissing the petition because Benson "fails to plausibly allege that the

BOP is wrongfully denying him earned time credits under the First Step Act."  (R&R 3, ECF No.

12.)  Benson timely filed objections to the report and recommendation on April 30, 2024.[1]  (Obj.,

---

[1] See Houston v. Lack, 487 U.S. 266 (1988).

ECF No. 17.)  For the reasons below, the court summarily dismisses the petition without prejudice and without requiring the respondent to file a return.

## I. REVIEW OF A REPORT AND RECOMMENDATION

A report and recommendation carries no "presumptive weight," and the responsibility for making a final determination remains with the court.  Mathews v. Weber, 423 U.S. 261, 271 (1976).  The court reviews de novo "those portions of the report . . . to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" or "recommit the matter . . . with instructions."  28 U.S.C. § 636(b)(1).  "To trigger de novo review, an objecting party 'must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'"  Elijah v. Dunbar, 66 F.4th 454, 460 (4th Cir. 2023) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).  In the absence of specific objections, the court reviews only for clear error, Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005), and need not give any explanation for adopting the report, Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

## II. DISCUSSION

### Objection #1

Benson first argues that the report and recommendation disregarded the plain language of the FSA in stating that he was not eligible to earn time credits until he arrived at FCI Edgefield. (Objs. 1-2, ECF No. 17.)  Although Benson is correct that he was eligible to receive time credits beginning on December 15, 2020, the date his sentence commenced, the court agrees with the magistrate judge that the BOP has not wrongfully denied him any earned time credits.

The FSA allows prisoners convicted of a non-disqualifying offense to earn time credits toward pre-release custody or early transfer to supervised release based on their "successful participation" in evidence-based recidivism reduction ("EBRR") programs and productive activities ("PAs"). 18 U.S.C. § 3632(d)(4)(A), (d)(4)(D).  Prisoners may not, however, earn time credits for programs completed before the enactment of the FSA or before their "sentence commences under section 3585(a)." Id. § 3632(d)(4)(B).  Section 3585(a) specifies that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to . . . the official detention facility at which the sentence is to be served." Id. § 3585(a).  In Benson's case, his sentence commenced on December 15, 2020, when he was remanded to the custody of the U.S. Marshals Service.  Judgment at 2, United States v. Benson, No. 2:19-cr-00122-JAW (D. Me. Dec. 17, 2020), ECF No. 160.  Thus, as of that date, Benson was eligible to earn FSA time credits.

Even though Benson was statutorily eligible to earn time credits as of December 15, 2020, there is no evidence in the record that he "successfully participated" in any EBRR programs or PAs before he arrived at FCI Edgefield on March 30, 2022.  See 28 C.F.R. § 523.41(c)(1) (noting that eligible inmates must be "successfully participating" in applicable programs "to earn FSA Time Credits for those" programs).  "'Successful participation' requires a determination by [BOP] staff that an eligible inmate has participated in the EBRR programs or PAs that the [BOP] has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR [p]rogram or PA." Id. § 523.41(c)(2) (emphasis added).

Because Benson did not undergo a risk and needs assessment until he arrived at his designated BOP facility on March 30, 2022, it follows that he could not have "successfully

participated" in any recommended programming before that time.  See, e.g., Poff v. Carr, No. 4:21-CV-900-P, 2022 WL 2133871, at *5-6 (N.D. Tex. June 14, 2022) (unpublished) ("[A]ny program or activity that [petitioner] seeks FSA time credits for must be approved by the BOP and be assigned to her based on her specific criminogenic needs"); Hare v. Ortiz, Civ. No. 20-14093 (RMB), 2021 WL 391280, at *9 (D.N.J. Feb. 4, 2021) (unpublished) ("Time [c]redits are earned only when an inmate successfully completes one of the BOP-approved EBRR programs or PAs related to one of the particular needs assigned to that inmate."); Milchin v. Warden, No. 3:22-cv-195 (KAD), 2022 WL 1658836, at *3 (D. Conn. May 25, 2022) (unpublished) ("[A] prisoner may earn time credits only for completing programs to which he has been specifically assigned based on his particular recidivism risk.").  Therefore, the magistrate judge did not err in her ultimate conclusion that Benson is not entitled to the additional FSA time credits that he seeks.

### Objection #2

In his second objection, Benson argues that the regulation requiring that inmates undergo an initial risk and needs assessment before earning time credits is based on an impermissible construction of the FSA.  (Objs. 2, ECF No. 17.)  The court disagrees and finds that the regulation is entitled to deference under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).

The Chevron framework first requires the court to consider "whether Congress has directly spoken to the precise question at issue."  Id. at 842.  If it has, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  Id. at 842-43.  At issue is the BOP's interpretation of what constitutes a prisoner's "successful participation in evidence-based recidivism reduction programming or productive activities."  18 U.S.C. § 3632(d)(4)(A).  The FSA does not define the term

"successful participation" or specify the standards by which a prisoner's participation in EBRR

programs or PAs is measured.  Because the FSA "is silent or ambiguous with respect to [this]

specific issue," the court proceeds to the second <u>Chevron</u> step and asks "whether the [BOP's]

answer is based on a permissible construction of the statute."  <u>Chevron</u>, 467 U.S. at 843.

      The regulation in question, 28 C.F.R. § 523.41(c)(2), defines "successful participation" as

requiring "a determination by [BOP] staff that an eligible inmate has participated in the EBRR

programs or PAs that the [BOP] has recommended based on the inmate's individualized risk and

needs assessment, and has complied with the requirements of each particular EBRR [p]rogram or

PA."  This regulation is not "arbitrary, capricious, or manifestly contrary to the [FSA]."

<u>Chevron</u>, 467 U.S. at 844.  In enacting the FSA, Congress directed the Attorney General to

develop a "risk and needs assessment system" to be used to, among other things, "determine the

recidivism risk of each prisoner as part of the intake process," "classify each prisoner as having

minimum, low, medium, or high risk for recidivism," and "determine the type and amount of

[EBRR] programming that is appropriate for each prisoner and assign each prisoner to such

programming accordingly, and based on the prisoner's specific criminogenic needs."  18 U.S.C.

§ 3632(a)(1), (3).  Once the risk and needs assessment system was developed, the BOP was

instructed to "implement and complete the initial intake risk and needs assessment for each

prisoner . . . and begin to assign prisoners to appropriate [EBRR] programs based on that

determination."  <u>Id.</u> § 3621(h)(1)(A).  Finally, to encourage participation in programs aimed at

reducing recidivism, the FSA mandated that prisoners be offered various incentives, including

the opportunity to earn time credits toward time in pre-release custody or supervised release.  <u>Id.</u>

§ 3632(d)(4)(C).

In light of the FSA's structure and purpose, the court concludes that the BOP's decision to exclude inmates who have not yet undergone a risk and needs assessment from receiving time credits is "based on a permissible construction of the statute." Chevron, 467 U.S. at 843. Indeed, as another court has observed, "[i]f an inmate could accrue FSA [time] credits by participating in any type of recidivism-reduction program or activity, the statutory language instructing the BOP to establish and implement an individualized risk and needs assessment system . . . would be superfluous." Rosario v. Spaulding, No. 1:21-cv-01160, 2021 WL 3884343, at *4 (M.D. Pa. Aug. 31, 2021) (unpublished) (internal quotation marks omitted). For these reasons, Benson's second objection is without merit.

### Objection #3

Finally, Benson appears to fault the BOP for not completing his initial risk and needs assessment sooner. (Objs. 1-2, ECF No. 17) (stating that he "awaited transport to his designated institution. . . . for over 15 months" and "never refused transport" or "request[ed] any delay" and arguing that the BOP "could have made [the risk and needs assessment] available at his holding facility or sent him a paper copy by mail"). To the extent Benson argues that he is entitled to FSA time credits due to the BOP's alleged dilatoriness in completing his assessment, however, that argument is without merit.

As an initial matter, BOP guidance specifies that an inmate's risk and needs assessment is not completed until the inmate "arriv[es] to [his] designated facility for service of [his] sentence." U.S. Dep't of Just., Fed. Bureau of Prisons, Program Statement 5410.01 CN-2, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4), at 8 (Mar. 10, 2023). It is undisputed that Benson underwent his assessment upon arriving at his designated facility on March 30, 2022, and is currently earning FSA time credits. More

6

fundamentally, the relief that Benson seeks – application of FSA time credits that he believes he would have earned had he been able to begin qualified programming sooner – is plainly barred by the statute. As the court has already explained, FSA time credits are awarded only for an inmate's successful participation in EBRR programs and PAs that the BOP has recommended based on the inmate's recidivism risk and criminogenic needs. The record, however, contains no evidence that Benson successfully participated in any such programs or activities before he arrived at FCI Edgefield. Accordingly, the court rejects Benson's final objection.

### III. CONCLUSION

After reviewing the objected-to portions of the report and recommendation de novo and the remainder for clear error, the court adopts Magistrate Judge Gossett's report and recommendation to the extent it is consistent with this order and incorporates it herein.

It is therefore

**ORDERED** that the petition is dismissed without prejudice and without requiring Respondent to file a return. It is further

**ORDERED** that a certificate of appealability is denied because Benson has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).[2]

**IT IS SO ORDERED.**

s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
May 15, 2024

---

[2] District courts must issue certificates of appealability when entering "a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Cases. These rules may be applied to other types of habeas corpus petitions. Rule 1(b), Rules Governing § 2254 Cases.

**NOTICE OF RIGHT TO APPEAL**

Petitioner is hereby notified that he has the right to appeal this order within sixty (60) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.